BROWNE GEORGE ROSS LLP
Eric M. George (State Bar No. 166403)
  egeorge@bgrfirm.com
Russell F. Wolpert (State Bar No. 97975)
  rwolpert@bgrfirm.com
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Plaintiff D. Stephen Sorensen

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| D. STEPHEN SORENSEN, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> NEW KOOSHAREM CORPORATION, a Delaware Corporation, <br><br> Defendant. | Case No. <br><br> **COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

502070.1

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff D. Stephen Sorensen ("Plaintiff") hereby complains against Defendant New Koosharem Corporation, a Delaware corporation ("Defendant") and alleges as follows:

**THE PARTIES**

1.      Plaintiff D. Stephen Sorensen ("Plaintiff") is an individual residing in the County of Santa Barbara, State of California.

2.      Plaintiff is informed and believes, and thereon alleges, that Defendant New Koosharem Corporation is a Delaware corporation with its principal place of business in Atlanta, Georgia.

**JURISDICTION AND VENUE**

3.      This Court has original jurisdiction of this action under 28 U.S.C. §1332(a)(1) in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

4.      This district is the proper venue for this action, as a substantial part of the events and omissions giving rise to the claims herein occurred in this district, and defendant is subject to personal jurisdiction in this district.

**GENERAL ALLEGATIONS**

5.      Effective on or about May 16, 2014, the parties entered into an agreement captioned *Covenants in Connection with Sale of Business Entity* ("the Agreement") under which Plaintiff agreed to sell, and Defendant agreed to purchase, the capital stock of certain entities.

6.      At the time of the Agreement, and for many years prior thereto, Defendant had its principal place of business at 3820 State Street, Santa Barbara, California, 93105.

7.      On January 5, 2015, a written announcement was made that Defendant (including its parent and affiliated entities) entered into a merger agreement with a competing and previously unrelated entity, EmployBridge, pursuant to which the companies:

-1-

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

A.     Agreed to merge; and

B.     Would be headquartered in Atlanta, Georgia – the existing headquarters of EmployBridge.  The Press Release stated that "The combined company will be headquartered in Atlanta, Georgia."

8.     February 9, 2015 was established as the date for the completion and implementation of the aforesaid merger.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief)

9.     Plaintiff avers and incorporates herein by reference each and every averment set forth fully hereinabove in paragraphs 1 through 8, inclusive.

10.     The Agreement provides, in pertinent part, as follows:

4.     <u>Non-interference with Business Relationships.</u>  During the Restricted Period, except on behalf of the Companies, Sorensen will not, directly or indirectly, as a director, officer, employee, manager, consultant, independent contractor, advisor or otherwise (including, without limitation, through any member of the Sorensen Group), do any of the following, nor will he permit any Butler Entity to do any of the following: make any statements or do any acts intended to cause, or reasonably likely to cause, or having the effect of causing, any franchisee, customer, client, vendor, distributor, licensor or licensee of the Companies(to make use of the services or purchase the products of any business in which Sorensen (i) has or expects to acquire any interest (other than the Companies), (ii) is or expects, to become a director, officer, employee, manager, consultant, independent contractor, advisor or otherwise (including, without limitation, through any member of the Sorensen Group), or (iii) has received or expects to receive any remuneration, if such services or products Compete with the Business or

(b)     engage in the Business or otherwise own any interest in, perform any services for or participate in or be connected with the Business of any Competitor or any other Business or organization which engages in Competition with  the Companies in any jurisdiction;

<u>provided</u>, <u>however</u>, that the provisions of this <u>Section 4</u> shall not be

502070.1

-2-

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

deemed to prohibit Sorensen's passive ownership of not more than five percent (5%) of the total shares of all classes of stock outstanding of any publicly-traded company.

5. <u>Non-Solicitation</u>. During the Restricted Period, except on behalf of the Companies, Sorensen will not, directly or indirectly, as a director, officer, employee, manager, consultant, independent contractor, advisor or otherwise (including, without limitation, through any member of the Sorensen Group), do any of the following, nor will he permit any Butler Entity to do any of the following: Employ or engage or solicit for employment or engagement, or advise or recommend to any other Person that he, she or it employ or solicit for employment or engagement any individual who is an employee or independent contractor of any of the Companies;

(b) Retain or attempt to retain, or advise or recommend to any other Person that he, she or it retain, the services of any independent contractor or consultant providing services to the Companies, if doing so would diminish the services, being provided to the Companies; or

(c) Solicit or do business with any present franchisees, customers, clients, vendors, distributors, licensors or licensees of the Companies or any former franchisees, customers, clients, vendors, distributors, licensors or licensees of the Companies or other Persons that were, within the six (6) month period prior to the prohibited conduct, franchisees, customers, clients, vendors, distributors, licensors or licensees of the Companies from whom the Companies derived revenue, for the purpose of Competing with the Companies' Business (prior to the Exclusion End Date, in each case, other than Limited Permitted Assignments or Exempt Customers, in each case, on behalf of any Butler Entity), or (ii) otherwise interfere with the business relationship between the Companies and any franchisee, customer, client, vendor, distributor, licensor or licensee of the Companies or other Person. (or any Person known to Sorensen to be a prospective franchisee, customer, client, vendor, distributor, licensor or licensee of the Companies).

/ / /

With respect to <u>Section 5(a)</u> though <u>Section 5(c)</u> above, and without limiting any obligations Sorensen may have as a fiduciary of any of the Companies:

      (i)      an "employee or independent contractor of any of the Companies" and an "independent contractor or consultant providing services to any of the. Companies" means any of the following (but excluding those certain individuals listed on <u>Exhibit 1</u>):

            A.     any Person who is (at the time of the prohibited conduct) or was (at any time within twenty-four (24) months prior to the prohibited conduct) (I) a senior executive officer of any of the Companies (including Senior Operating Committee members, regional managers, branch managers, and direct reports of Sorensen or Paul Sorensen), .(II) each sales representative that (1) is in the top 25% of all sales representatives of the Companies as measured by (x) annual compensation received in the prior year, (y) annual compensation expected to be received in the current year, or (z) gross revenue generated for the Companies, or (2) has or is otherwise responsible for one or more clients that are in the top 25% of all clients of the Companies measured by gross revenue received from such clients, and (III) recruiters that are in the top 25% of all recruiters of the Companies as measured by (1) annual compensation received in the prior year, (2) annual compensation expected to be received in the current year, or (3) number of Associates recruited to the Companies;

            B.     any Person who is (at the time of the prohibited conduct) or was (at any time within twelve (12) months prior to the prohibited conduct) a manager or supervisor of any of the Companies (excluding anyone in <u>clause A</u> above or <u>clause C</u> below); and

/ / /

C.      any Person who is (at the time of the prohibited conduct) or was (at any time within six (6) months prior to the prohibited conduct) an employee, independent' contractor or consultant of or for any of the Companies and who is not otherwise identified in clauses A and B above, but specifically excluding each Associate.

(ii)      a "franchisee, customer, client, vendor, distributor, licensor or licensee of the Companies" includes any Person known to Sorensen to be a prospective franchisee, customer, client, vendor, distributor, licensor or licensee of the Companies; and

(iii)     Sorensen shall not be prohibited from advertising to the general public any employment opportunities or requests for consultancy services (which advertisements are not targeted at employees or independent contractors of any of the Companies), as long as Sorensen otherwise complies with the terms and conditions of this Section 5, which, for the avoidance of doubt, means that Sorensen may not employ or engage any "employee or independent contractor of any of the Companies" or any "independent contractor or consultant providing services to any of the Companies" who responds to such advertisements.

11.    "Business" is defined in the Agreement as:

"(e)    "Business" means (i) the business of providing temporary staffing and employment services throughout the United States and Canada, directly or indirectly, including the provision of such services to third parties, such as, but not limited to, personnel, payroll, and risk management services and (ii) the franchising, as franchisor or franchisee, of businesses for the provision of temporary staffing and employment services throughout the United States and Canada, directly or indirectly, including businesses that provide such services to third parties such as, but not limited to, personnel, payroll, and risk management services."

/ / /

12.     "Competition" is not defined in the Agreement, but "Competitor" is defined as:

> "(k)    "Competitor" means any person or entity that directly or indirectly competes with the Companies in the Business; provided, however, that prior to the Exclusion End Date, Competitor shall not include any Butler Entity or Esperer in respect of their Allowed Business but shall include Butler Entities and Esperer in respect of all other activities.  The terms "Competition," "Competitive" and "Compete" have meanings correlative to the foregoing.

13.     An actual controversy has arisen and now exists between Plaintiff and Defendant concerning their respective rights and duties under the Agreement in that Plaintiff contends and, on information and belief, Defendant disputes, that:

A.     The Non-Competition clause of the Agreement (Section 4 thereof) is neither reasonable nor necessary to protect Defendant's interest because, inter alia, it is overly broad, it has no geographic boundaries or limits within the entire nation and, indeed, purports to prevent Plaintiff from being involved in the temporary staffing or employment business not only anywhere and everywhere in America, but also in Canada as well, and its restrictions on Plaintiff are not reasonable and necessary in their duration, in the activities they cover, or in the territory to which they apply.

B.     The Non-Competition clause of the Agreement (Section 4 thereof) purports to prohibit Plaintiff from engaging in any business whatsoever with the categories of persons defined therein – even if such business does not compete with Defendant – and is not reasonable and necessary for this reason as well.

C.     The Non-Solicitation clause of the Agreement (Section 5 thereof) is in fact not a non-solicitation agreement, because it purports to prevent Plaintiff from hiring or otherwise doing business with people whether or not Plaintiff solicits them – even if such third parties communicate with Plaintiff in order

1    to seek employment, and it is not restricted to improper methods of

2    solicitation, and is improper and unenforceable these reasons, among others.

3    14.    Plaintiff desires a judicial determination of his rights and duties, and a

4    declaration as to which party's position as to the meaning and validity of the

5    Agreement's terms as set forth herein is correct.

6    15.    A judicial declaration is necessary and appropriate at this time and

7    under the circumstances in order that Plaintiff may ascertain his rights and duties

8    under the Agreement.  This is particularly important in this instance because, *inter*

9    *alia*, Defendant publicly proclaims that it is the "largest industrial staffing company

10   in North America" and states that the combined company will have "$3 billion in

11   combined annual revenue."  Defendant has already violated its obligations under its

12   2014 *Employment Agreement* with Plaintiff, wrongly forcing him out as Defendant's

13   Chief Executive Officer in or about early January 2015, taking away his day to day

14   stewardship of the company, and instead giving him the largely ceremonial – and

15   transitory – title of  "Vice Chairman" of the Board, notwithstanding the three year

16   employment term provided in the Employment Agreement under which he was to

17   serve as CEO.

18   16.    Moreover, Defendant recently launched an "investigation" of Plaintiff

19   in a transparently obvious attempt to retrospectively justify its extra-contractual

20   behavior and its prior representations to Plaintiff that it did not desire to merge with

21   EmployBridge when such a merger – desired by Plaintiff – would have been far

22   more financially advantageous to Plaintiff as well as the creditors.

23   17.    On February 10, 2015, Defendant corresponded with Plaintiff,

24   notifying him that effective immediately, he was on *unpaid* "administrative leave"

25   from the company, during which he could no longer enter or access company

26   property, yet Plaintiff purportedly had to still comply with all (unidentified) "current

27   obligations to the Company – contractual, statutory, and common law," which

28   obligations, Defendant asserted, "remain in full effect."  Attached hereto as Exhibit

1   A is a true and correct copy of the February 10, 2015 letter.

2       18.     Defendant's purported assertion that Plaintiff had to comply with all

3   "current obligations" to the company while being paid nothing was, according to

4   Defendant's February 10, 2015 letter, based on (a) a Board meeting that occurred

5   three weeks earlier, and (b) an "ongoing investigation" that, by Defendant's

6   admission was, as Defendant's characterization of its status implies, not concluded.

7       19.     A further actual controversy has arisen and now exists between

8   Plaintiff and Defendant concerning their respective rights and duties under a

9   separate agreement (the "Release") entered into in or about March 2014, pursuant to

10  which the parties also agreed to discharges, waivers, and releases:

11           ". . . FROM ANY AND ALL CLAIMS, CAUSES OF
             ACTION, LITIGATION CLAIMS AND ANY OTHER
12           DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES,
             ACTIONS, REMEDIES, AND LIABILITIES
13           WHATSOEVER, WHETHER KNOWN OR
             UNKNOWN, FORESEEN OR UNFORESEEN,
14           EXISTING AS OF THE EFFECTIVE DATE OR
             THEREAFTER ARISING, IN LAW, AT EQUITY,
15           WHETHER FOR TORT, CONTRACT, OR
             OTHERWISE, BASED IN WHOLE OR IN PART UPON
16           ANY ACT OR OMISSION, TRANSACTION, OR
             OTHER OCCURRENCE OR CIRCUMSTANCES
17           EXISTING OR TAKING PLACE PRIOR TO OR ON
             THE EFFECTIVE DATE. . . ."

18

19      20.     Plaintiff contends that the Release prohibits Defendant from

20  terminating Plaintiff for cause, and from taking any other adverse employment

21  decision against Plaintiff, based on any acts or omissions prior to the effective date

22  of the Release, while Defendant communicated to Plaintiff the belief that the

23  Release does not immunize Plaintiff from any past conduct.  The language and

24  interpretation of the Release is therefore in dispute.

25      21.     A judicial declaration is necessary and appropriate at this time and

26  under the circumstances in order for Plaintiff to ascertain his rights and duties under

27  the Release, which is important for the reasons set forth herein.

28  / / /

22.     Finally, an actual controversy has arisen and now exists between Plaintiff and Defendant concerning their respective rights and duties in that Defendant contends, as asserted in its February 10, 2015 letter, that Plaintiff may not enter "Company property or locations, including Company office space," whereas Plaintiff contends that Defendant does not have the right to restrict his access to all company property for a variety of reasons, including, *inter alia*, because Plaintiff's office and surrounding executive area are owned by Par Alma Investments, LLC (of which Plaintiff is the manager) and leased to Esperer Holdings, Inc., a third party, such that Plaintiff is required to have access to such property, and Defendant lacks authority to engage in a de facto, extra-judicial eviction of Plaintiff from his own office space.

23.     Defendant has also threatened Plaintiff with litigation, stating that Plaintiff can accept Defendant's unilateral dictates "the easy way" or have them imposed on him "the hard way."  With Defendant trying to create a revisionist history of its improper actions and threatening Plaintiff , Plaintiff does not wish to risk potentially huge damage claims by unilaterally exercising his right to ply his trade or enter his property without this Court's imprimatur.

## SECOND CLAIM FOR RELIEF

### (Injunctive Relief)

24.     Plaintiff avers and incorporates herein by reference each and every averment set forth fully hereinabove in paragraphs 1 through 23, inclusive.

25.     Defendant will, unless enjoined and restrained by this Court, demand and seek to prevent Plaintiff from (a) engaging in the employee and staffing business, which has been a mainstay of Plaintiff's professional life since 1985, (b) engaging in any business whatsoever with broad categories of persons, (c) hiring individuals even if he has not solicited their employment, all while at the same time having (i) engineered a relationship under which Plaintiff had to forego considerable economic benefits that could have potentially been realized via and earlier merger

with EmployBridge, instead offering Plaintiff a guaranty of employment with Defendant, only to then (ii) breach that same employment agreement used as an enticement to convince Plaintiff to forego his earlier merger plans and (iii) use the threats on behalf of a company with $3 billion in revenues to prevent Plaintiff from engaging in a wide range of economic activity throughout North America while insisting that he is still Defendant's employee yet paying him nothing, and (d) seeking to oust Plaintiff from his own office space and surrounding executive area.

26.   Defendant's threatened wrongful conduct, unless and until enjoined and restrained by this Court, will cause great and irreparable injury to Plaintiff, including, *inter alia*, because Plaintiff will have to choose between not foregoing future economic opportunities while being paid nothing by the company that insists he is still its employee, albeit an uncompensated one, on the one hand, and being unable to enter his own property, or doing so and having a company with billions of dollars in revenue threaten him, on the other hand.

27.   Plaintiff has no adequate remedy at law for the injuries that he is suffering and will continue to suffered absent injunctive relief because, *inter alia*, (a) it would be extremely risky for him to take on the role of judge and jury and simply assume that Sections 4 and 5 of the Agreement are unenforceable and that Plaintiff is legally permitted to use his office and surrounding executive area, meaning he will have to continue to be without a livelihood absent such relief, and (b) it will be impossible for Plaintiff to determine the precise amount of damage that he will suffer if Defendant's conduct is not restrained.

28.   As a proximate result of Defendant's wrongful conduct, Plaintiff has been damaged in a sum not presently known with precision (including because the amount changes and increases daily as Defendant's wrongly behavior continues), but believed to already be in the amount of many millions of dollars, and Plaintiff will be further damaged as long as Defendant's conduct continues.

### THIRD CLAIM FOR RELIEF

502070.1

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

**(Breach of Contract)**

29.     Plaintiff avers and incorporates herein by reference each and every averment set forth fully hereinabove in paragraphs 1 through 28, inclusive.

30.     For fair and valuable consideration, the parties hereto agreed upon and entered into a written contract captioned "Employment Agreement" effective on or about May 16, 2014.

31.     The Employment Agreement provided, *inter alia*, that Plaintiff was to serve for a minimum of three years as Defendant's Chief Executive Officer, in consideration of a base salary of $650,000 per annum, a retention bonus of $500,000 per annum, an annual bonus in the "target" sum of $650,000 – and the possibility of increasing to $1.3 million – and various other benefits, perquisites, and additional consideration.

32.     Plaintiff has materially performed all terms of the Employment Agreement required to be performed on his part except insofar as such performance has been prevented and/or excused by Defendant.

33.     Defendant has breached the agreement for the reasons identified hereinabove, including in particular in paragraph 15 through 23 hereinabove, by, *inter alia*, removing Plaintiff for his bargained for role of CEO, and then, the following month, removing him from his replacement role – without pay, and with in excess of two years remaining on the initial term of his Employment Agreement. This constitutes a de facto termination for cause, even though no cause exists, no cause ever existed, and to the extent that any action constituting sufficient cause might ever have existed, such matters were released by Defendant pursuant to the parties' release agreement entered into in or about March, 2014.

34.     Defendant has further breached various other terms of the Employment Agreement, including, *inter alia*, satisfying certain obligations personally guaranteed by Plaintiff and paying third party vendors.

35.     Defendant has also breached the implied covenant of good faith and

1  fair dealing for the reasons set forth hereinabove, including in paragraphs 15 – 23

2  herein, including, *inter alia*, by initially advising Plaintiff that it did not want to

3  engage in the merger with EmployBridge that Plaintiff sought and engineered,

4  instead convincing him to not merge but to sign an employment agreement with

5  Defendant, then, after the Employment Agreement was in place, going forward with

6  the same merger, but on terms far less lucrative to Plaintiff, then removing Plaintiff

7  from his CEO position as set forth in the Employment Agreement, then, the

8  following month, removing him from that substitute position, using company

9  resources to launch an investigation targeting Plaintiff so as to justify Defendant's

10  improper behavior, and then banishing Plaintiff from the company and refusing to

11  pay Plaintiff per the Employment Agreement based on an investigation that was still

12  ongoing and had not reached its (pre-ordained) conclusion.

13       36.    As a proximate result of Defendant's breach of contract as aforesaid,

14  Plaintiff has been damaged in an amount not yet fully ascertained, but in the sum of

15  at least the several millions of dollars.

16

17                                **PRAYER**

18  WHEREFORE, Plaintiff prays for relief against Defendants as follows:

19  1.    For monetary damages according to proof;

20  2.    For a declaration, and for the issuance of injunctive relief, that:

21      (a)  Sections 4 and 5 of the May 16, 2014 Agreement are

22  unenforceable;

23      (b)  the Release prohibits Defendant from terminating Plaintiff for

24  cause, and from taking any other adverse employment decision against

25  Plaintiff, based on any acts or omissions prior to the effective date of the

26  Release;

27      (c)  Defendant's placement of Plaintiff on "administrative leave" was,

28  in effect, an impermissible termination for cause; and

-12-

1           (d)  Defendant is not entitled to restrict Plaintiff's use of his office and

2    surrounding executive area.

3        3.     For an award of attorneys' fees;

4        4.     For costs of suit incurred herein; and

5        5.     For such other and further relief as the Court deems just and proper.

6

7    DATED:  February 13, 2015       BROWNE GEORGE ROSS LLP
                             Eric M. George

8                                 Russell F. Wolpert

9

10                       By       /s/ Eric M. George

11                                Eric M. George
                   Attorneys for Plaintiff D. Stephen Sorensen

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

502070.1

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

1    **<u>DEMAND FOR JURY TRIAL</u>**

2        Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal

3    Rules of Civil Procedure.

4

5

6    DATED:  February 13, 2015          BROWNE GEORGE ROSS LLP
                                        Eric M. George
7                                       Russell F. Wolpert

8

9                                       By  _____/s/ Eric M. George_____
                                              Eric M. George
10                                      Attorneys for Plaintiff D. Stephen Sorensen

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

502070.1

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF